20 MAG 3131

ORIGINAL

Approved: _____
DANIEL G. NESSIM/KEDAR S. BHATIA
Assistant United States Attorneys

Before:  HONORABLE SARAH L. CAVE
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - X
                              :   COMPLAINT
UNITED STATES OF AMERICA      :
                              :   Violation of 21 U.S.C.
       - v. -                 :   § 846
                              :
DAGOBERTO GONZALEZ,           :   COUNTY OF OFFENSE:
JOSE VIZCAINO CRUZ, and       :   BRONX
SANTO AGRAPINO TEJADA MOTA,   :
                              :
       Defendants.            :
- - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      WILLIAM BLANCO, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

## COUNT ONE

      1.   In or about March 2020, in the Southern District of New York and elsewhere, DAGOBERTO GONZALEZ, JOSE VIZCAINO CRUZ, and SANTO AGRAPINO TEJADA MOTA, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

      2.   It was a part and an object of the conspiracy that DAGOBERTO GONZALEZ, JOSE VIZCAINO CRUZ, and SANTO AGRAPINO TEJADA MOTA, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      3.   The controlled substance that DAGOBERTO GONZALEZ, JOSE VIZCAINO CRUZ, and SANTO AGRAPINO TEJADA MOTA, the defendants, conspired to distribute and possess with intent to distribute was

400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. In or about March 2020, law enforcement officers obtained a judicially authorized warrant to monitor the location of a particular mobile phone ("Mobile Phone-1"), which was believed by law enforcement to be used by an individual engaged in narcotics trafficking. Based on my review of records provided by a telecommunications provider, I know that the phone number associated with Mobile Phone-1 is subscribed to in the name of DAGOBERTO GONZALEZ, the defendant. The subscriber information for that phone number also lists a subscriber address in Mercedes, Texas.

6. Based on my participation in this investigation, including my conversations with other law enforcement officers, my review of records and reports, and my own observations, I have learned, in substance and in part, the following:

a. On or about March 19, 2020, law enforcement observed that the location information for Mobile Phone-1 showed it was at a particular location in Pennsylvania. When law enforcement officers went to that location, they learned that DAGOBERTO GONZALEZ, the defendant, was checked into a nearby hotel ("Hotel-1"). In the parking lot for Hotel-1, law enforcement officers observed a particular vehicle with a license plate from Texas ("Vehicle-1"). As set forth above, the subscriber address for Mobile Phone-1, believed to be used by GONZALEZ, is located in Texas.

2

b. Later on or about March 19, 2020, law enforcement officers observed Vehicle-1 travel from Pennsylvania to a particular hotel in the Bronx, New York ("Hotel-2"). Vehicle-1 was driven by an individual later identified as DAGOBERTO GONZALEZ, the defendant. Also in Vehicle-1 were individuals subsequently identified as GONZALEZ's girlfriend and three children. Law enforcement officers observed GONZALEZ and the passengers from Vehicle-1 check into Hotel-2.

c. On or about the following day, March 20, 2020, at approximately 11:45 a.m., law enforcement officers observed a blue minivan ("Vehicle-2") enter the parking lot area of Hotel-2 (the "Parking Lot") and park nearby Vehicle-1. At that time, GONZALEZ was in the vicinity of Vehicle-1. An individual later identified as JOSE VIZCAINO CRUZ, the defendant, was driving Vehicle-2, and another individual, later identified as SANTO AGRAPINO TEJADA MOTA, the defendant, was in the front passenger's seat of Vehicle-2.

d. Law enforcement officers continued conducting surveillance of the ensuing meeting and transaction involving the defendants in the Parking Lot. GONZALEZ, who was outside Vehicle-1, exchanged greetings with VIZCAINO CRUZ and TEJADA MOTA, who were inside Vehicle-2. GONZALEZ subsequently entered Vehicle-1, which was parked with the front of the car facing a wall, and backed up the car a short distance.

e. VIZCAINO CRUZ and TEJADA MOTA then went to the front hood area of Vehicle-1. When they exited Vehicle-2 and approached Vehicle-1, each defendant brought with him one car battery. VIZCAINO CRUZ and TEJADA MOTA then accessed the engine block area of Vehicle-1. They removed one car battery from Vehicle-1, replaced it with a car battery they had brought over from Vehicle-2, and then carried the car battery originally in Vehicle-1 to Vehicle-2. They then removed another car battery from Vehicle-1, replaced it with the other car battery they had brought over from Vehicle-2, and then carried the second car battery originally in Vehicle-1 to Vehicle-2. Based on my training and experience, I know that narcotics traffickers commonly use car batteries with hidden compartments to conceal narcotics and narcotics proceeds.

f. VIZCAINO CRUZ and TEJADA MOTA subsequently left the Parking Lot in Vehicle-2. Law enforcement officers followed Vehicle-2 until it pulled over to the side of the road at another location in the Bronx.

g. Law enforcement officers exited their vehicle and approached Vehicle-2. When they approached VIZCAINO CRUZ,

3

sitting in the driver's seat, law enforcement officers asked where he was coming from and he falsely told law enforcement officers he was coming from the supermarket. In response to a question from law enforcement officers, VIZCAINO CRUZ also stated that there was nothing illegal in his vehicle.

      h.  VIZCAINO CRUZ provided consent for law enforcement officers to search Vehicle-2. Law enforcement officers then searched Vehicle-2. Behind the driver's seat, law enforcement officers found one car battery ("Battery-1"). Behind the passenger seat, law enforcement officers found another car battery ("Battery-2"). The bottom plates of both Battery-1 and Battery-2 appeared to have been altered since they were manufactured. Based on the law enforcement officers' training and experience and the circumstances of the exchange of batteries at the Parking Lot described above, the law enforcement officers believed that Battery-1 and Battery-2 likely contained hidden compartments to store contraband.

      i.  Law enforcement officers subsequently opened the bottom plates of Battery-1 and Battery-2. Inside Battery-1, law enforcement officers found four packages containing a powdery substance that, based on the law enforcement officers' training and experience, appeared to be narcotics. Inside Battery-2, law enforcement officers found an additional four packages containing a powdery substance that, based on the law enforcement officers' training and experience, appeared to be narcotics. All eight packages found in the batteries were packaged in a similar manner and the appearance of the powdery substance was similar across the packages.

      7.  Based on my conversations with other law enforcement officers and my review of law enforcement records, I have learned that the substances in Battery-1 and Battery-2 were subsequently weighed and field tested. Battery-1 contained approximately four kilograms of a powdery substance. Battery-2 also contained approximately four kilograms of a powdery substance. Portions of the substances from Battery-1 and Battery-2 were field tested, and returned a partial match for the presence of cocaine. Based on my training and experience, I have learned that the field test used by the DEA commonly does not return results for fentanyl, and a substance that actually contains fentanyl commonly will present results on a field test indicating a partial match for cocaine. Based on the results of these field tests, my training and experience, and the observations of the substances contained in Battery-1 and Battery-2, I believe that the powdery substances in the batteries likely contain fentanyl.

4

8.      Based on my conversations with other law enforcement officers and my own observations, I have learned, in substance and in part, the following:

a.      While some law enforcement officers followed Vehicle-2 and recovered Battery-1 and Battery-2, as set forth above, other law enforcement officers remained at Hotel-2 and maintained surveillance on Vehicle-1. After Vehicle-2 left the Parking Lot, Vehicle-1 also left the Parking Lot.

b.      After Battery-1 and Battery-2 containing suspected fentanyl had been recovered from Vehicle-2, law enforcement officers who had maintained surveillance of Vehicle-1 stopped Vehicle-1 in the Bronx. DAGOBERTO GONZALEZ, the defendant, was driving Vehicle-1 and his girlfriend and three children were in the vehicle. GONZALEZ was subsequently placed under arrest.

c.      Law enforcement officers recovered approximately $10,000 in United States currency from GONZALEZ's person. When law enforcement officers asked GONZALEZ's girlfriend to present an identification card, she opened her purse and law enforcement observed another $10,000 in United States currency in her purse, which they recovered. Based on my training, experience, and participation in this investigation, I believe that the $20,000 in cash recovered likely is proceeds of the narcotics transaction in the Parking Lot described above.

9.      On or about March 20, 2020, law enforcement officers interviewed JOSE VIZCAINO CRUZ, the defendant, after he was taken into custody. VIZCAINO CRUZ was advised of his *Miranda* rights and waived those rights. VIZCAINO CRUZ then stated, in part and in substance, that he gave $20,000 to the individual known to law enforcement officers as DAGOBERTO GONZALEZ, the defendant, as part of the transaction described above in the Parking Lot.

WHEREFORE, I respectfully request that DAGOBERTO GONZALEZ, JOSE VIZCAINO CRUZ, and SANTO AGRAPINO TEJADA MOTA, the defendants, be imprisoned or bailed, as the case may be.

_____
Special Agent William Blanco
Drug Enforcement Administration

Sworn to before me this
23rd day of March, 2020.

_____
THE HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York

6